<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES L. JOYCE,<br><br>        Plaintiff,<br><br>        v.<br><br>MAERSK LINE, LTD.,<br><br>        Defendant. | Civil Action No. 13-5566 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on the motion for summary judgment filed by Defendant Maersk Line, Ltd. ("Maersk"). (D.E. No. 59). The Court has considered the parties' submissions in support of and in opposition to the instant motion and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court grants summary judgment in favor of Defendant.

**I. Factual and Procedural Background**

Plaintiff James Joyce is a member of the Seafarer's International Union with whom Defendant Maersk negotiated a Collective Bargaining Agreement ("CBA") known as the Standard Freightship Agreement 2012. (D.E. No. 61, Defendant's Statement of Undisputed Material Facts (SUMF") ¶ 1).

Plaintiff signed an "Articles of Agreement" in which Plaintiff bound himself to serve as an abled bodied seaman aboard the M/V MAERSK OHIO from September 18, 2012, until December 18, 2012. (*Id.* ¶¶ 3, 7). The ship was to leave from Port of Newark to such other ports as the master of the ship would direct, and back to a final port discharge in the continental United States.

(*Id.* ¶ 3). The Articles of Agreement signed by Plaintiff was incorporated by reference into the CBA. (*Id.* ¶ 4).

On October 7, 2012, Plaintiff was discharged from the ship for medical reasons and repatriated to the United States from a port in Spain. (*Id.* ¶ 5). Under the CBA, Plaintiff was entitled to receive unearned wages "for the remaining period of his contract after discharge from the vessel." (*Id.* ¶ 6). Significantly, the CBA defined unearned wages as base wages, excluding overtime. (*Id.*). As such, Plaintiff received unearned wages as base wages from the time of his discharge on October 7, 2012, until the scheduled end of the contract period on December 18, 2012. (*Id.* ¶ 8). Plaintiff also received "maintenance"[1] at a rate of $16 per day for the full period of his disability. (*Id.* ¶ 10).

On September 19, 2013, Plaintiff filed a proposed class action complaint in the instant case, alleging that portions of the CBA governing unearned wages and maintenance payments violated general maritime law and the Shipowners' Liability Convention, 54 Stat. 1693. (D.E. No. 1). On August 8, 2014, Plaintiff filed an Amended Complaint. (D.E. No 41, Amended Complaint, ("Am. Compl.")).

On September 30, 2015, Defendant filed the instant motion for summary judgment. (D.E. No. 59; D.E. No. 60, Defendant's Brief in Support of Summary Judgment, ("Def. Mov. Br.")). On October 14, 2015, Plaintiff filed a brief in opposition. (D.E. No. 62-1, Plaintiff's Brief in Opposition ("Pl. Opp. Br.")). On October 21, 2015, Defendant filed a brief in reply. (D.E. No. 63, Defendant's Reply Brief ("Def. Reply Br.")). The matter is now ripe for resolution.

---

[1] Maintenance is defined as "the payment by a shipowner to a seaman for the seaman's food and lodging expenses incurred while he is ashore as a result of illness or accident." *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 631 (3d Cir. 1990).

**II.      Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a genuine issue of material fact exists, a court must consider all facts and their reasonable inferences in the light most favorable to the nonmoving party.  *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial.  *Id.* at 324. In opposing summary judgment, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest upon the mere allegations or denials in its pleadings.  *See Celotex*, 477 U.S. at 324.  However, even where no genuine issue of material fact exists, "[A] motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law."  *Milton v. Ray*, 301 F. App'x 130, 132 (3d Cir. 2008).

**III.     Discussion**

Plaintiff asserts that Defendant is liable for additional maintenance and unearned wage payments beyond the amount set forth in the CBA, because the portions of the CBA setting those amounts allegedly violate general maritime law and the Shipowners' Liability Convention, 54 stat. 1693.  (Am. Compl. ¶ 4).  The Amended Complaint sets forth three grounds for liability: first, the

Amended Complaint alleges that the maintenance rate set forth in the CBA was so low as to constitute an impermissible abrogation of Plaintiff's right to maintenance payments under general maritime law. (*Id.*). Instead, Plaintiff argues that he was entitled to maintenance pay at a rate of $78 per day. (Pl. Opp. Br. at 14-15). Second, the Amended Complaint alleges that under general maritime law, Plaintiff was entitled to unearned wages including both base and overtime pay, despite the CBA's definition of unearned wages as base pay only. (Am. Compl. ¶ 4). And third, Plaintiff alleges that under the Shipowners' Liability Convention, seamen with dependents such as Plaintiff were entitled to such unearned wages until cured rather than until the conclusion of the contract term. (*Id.*).

In response, Defendant argues that each argument fails as a matter of law. (*See generally*, Def. Mov. Br.). Significantly, Plaintiff does not dispute any material fact presented by Defendant in support of its motion. Accordingly, the Court resolves the motion purely as a matter of law. *See Milton*, 301 F. App'x at 132 ("A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.").

### A. Maintenance, Cure, and Unearned Wages Generally

Under general maritime law, when a seaman falls sick or is injured in the service of the ship on which he is serving, the shipowner is liable to provide the seaman with "maintenance," "cure," and "unearned wages" for the remainder of the voyage. *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 413 (2009) (citing *The Osceola*, 189 U.S. 158, 175 (1903)). "Maintenance" refers to food and lodging at the expense of the ship, and "cure" refers to medical treatment. *Id.* "The shipowner is obliged to pay maintenance and cure until the seaman has reached the point of maximum cure, that is until the seaman is cured or his condition is diagnosed as permanent and incurable." *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 633-34 (3d Cir. 1990). "Unearned wages"

in this context refers to wages which "the seaman would have earned if he had been able to complete the contractual terms of employment, usually to work until the end of the voyage." *Id.* at 634 n.2.

The seaman's right to maintenance and cure, which has been recognized for centuries, "derives from the unique hazards which attend the work of seamen and fosters the combined object of encouraging marine commerce and assuring the well-being of seamen." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3-4 (1975) (internal quotation marks and citation omitted). "Because seamen are considered wards of the court, the duty to provide maintenance and cure must be construed liberally." *Smith v. Del. Bay Launch Serv., Inc.*, 972 F. Supp. 836, 847 (D. Del. 1997) (citing *Vaughan v. Atkinson,* 369 U.S. 527, 531-32 (1962)).

The Supreme Court has described this right "as an incident to employment or a right annexed to the employment contract." *Barnes*, 900 F.2d at 636 (citing *Vaughan v. Atkinson*, 369 U.S. 527, 532 (1962)). The shipowner's duty to provide maintenance attaches once the seaman enters the service of the ship, and it is "a duty that no private agreement is competent to abrogate." *Barnes v. Andover Co., L.P.*, 900 F.2d 630, 636 (3d Cir. 1990). Thus, a CBA may establish a fixed maintenance rate, but it may not annul the ship-owner's maintenance obligation in its entirety. *See id.* Where a seaman believes that his right to maintenance and cure and unearned wages has been violated, general maritime law provides a private right of action to recover the amount owed by law. *See Kopacz v. Del. River & Bay Auth.*, 248 F. App'x 319, 323 (3d Cir. 2007) (noting that failure to provide maintenance and cure is "a judicially created cause of action in which liability is without fault"). Below, the Court will consider the parties' arguments with respect to each of Plaintiff's three claims for additional maintenance and unearned wages.

### B. Whether the CBA Properly Set Maintenance Payments at $16 per Day

Plaintiff alleges that the CBA provision setting maintenance payments at $16 per day violates general maritime law. (Pl. Opp. Br. at 15-16; Am. Compl. ¶ 4). This is because, according to Plaintiff, the $16 rate is so inadequate as to constitute an abrogation of his right to receive adequate funding for room and board while injured. (Pl. Opp. Br. at 14-16). Plaintiff relies on the Third Circuit's 1990 decision in *Barnes v. Andover Company, L.P.*, in which the court awarded maintenance based on expenses actually incurred by the plaintiff seaman, despite a CBA provision setting maintenance at a lower amount. 900 F.2d 630, 634-35 (3d Cir. 1990).

Defendant responds that *Barnes* should be limited to the facts of that case, and its holding should not be applied to Plaintiff's claim for additional maintenance. (Def. Mov. Br. at 18-23). Thus, Defendant argues that this claim should be dismissed as a matter of law because the $16 rate at which Plaintiff was actually paid remains valid under general maritime law. (*Id.*). However, the Court need not determine whether *Barnes* mandates a higher maintenance rate. As discussed below, even if *Barnes* applies, Plaintiff has nevertheless failed to meet his evidentiary burden of showing actual expenses which would entitle him to relief under *Barnes*.

In *Barnes*, the plaintiff, a unionized seaman, was injured while working aboard the M/V Adonis. *Barnes*, 900 F.2d at 632. Among other claims, the plaintiff alleged that under general maritime law, he was entitled to $35 per day in maintenance despite a CBA provision contractually limiting maintenance payments to $8 per day. *Id.*

The court began its analysis by noting that "in those cases where the courts have set the rate of maintenance for unionized seamen, they have generally limited the award to the amount specified in the union contract regardless of actual expenses." *Id.* at 635 (citing *Macedo v. F/V*

*Paul & Michelle*, 868 F.2d 519, 522 (1st Cir. 1989); *Al-Zawkari v. Am. S.S. Co.*, 871 F.2d 585, 588 (6th Cir. 1989); *Gardiner v. Sea-Land Serv., Inc.*, 786 F.2d 943, 948 (9th Cir. 1986).

However, the *Barnes* court disagreed with those courts and favorably cited Judge Fletcher's dissent in *Gardiner*, which took the position that "a union cannot bargain away the individual seaman's common law right to maintenance by agreeing to a wholly inadequate figure as a daily maintenance rate." *Id.* at 640 (citing *Gardiner*, 786 F.2d at 950). In adopting Judge Fletcher's logic, the *Barnes* court concluded that it is "inconsistent both with the traditional doctrine of maintenance and with our rejection of preemption of maintenance by the labor laws to hold that the maintenance rate set in the collective bargaining agreement is binding on a seaman who can show higher daily expenses." *Id.*

The *Barnes* court then turned to the facts of that case, determining that the plaintiff had "met his common law burden of producing evidence, credited by the district court, that the $8 rate was insufficient to provide him with food and lodging." *Id.* In support of its conclusion, the court cited a provision of the union contract which provided seamen with $37 for room and board while the ship was in port. *Id.* The court also took judicial notice "that in Philadelphia, as in San Francisco, $8 a day was insufficient to provide him with food and lodging." *Id.*

Having determined that the $8 rate was insufficient, the court then analyzed the plaintiff's actual expenses to determine the proper amount of maintenance owed. *Id.* at 640-41. The court referenced testimony regarding the plaintiff's share of household expenses for electricity, food, and homeowner's insurance, finding that each was properly calculated into his ultimate maintenance rate by the district court. *Id.* The court concluded that this testimony satisfied the

7

plaintiff's requirement of showing that he had incurred expenses or liability for expenses to support an award for maintenance in that amount. *Id.*[2]

Here, Plaintiff provides evidence which could conceivably support a finding that the CBA's $16 maintenance rate was insufficient to provide for Plaintiff's room and board. As the seaman did in *Barnes*, Plaintiff points to a provision of the CBA which provides for substantially higher allowance for room and board for seamen on shore leave. Specifically, that provision states:

> ROOM AND MEAL ALLOWANCE. When board is not furnished to Unlicensed Personnel, they shall receive a meal allowance of six dollars ($6.00) for breakfast, twelve dollars ($12.00) for dinner and twenty dollars ($20.00) for supper. Quarters allowance shall be forty dollars ($40.00) per night on lodging claims in port. . . .

(D.E. No. 59-4 at 32). Thus, the CBA appears to provide an allowance for room and board for limited shore leave amounting to $78 per day. (*Id.*). Additionally, Plaintiff attaches printouts of a "CPI Inflation Calculator" from the U.S. Bureau of Labor Statistics' website, which indicate that $16 in today's dollars, adjusted for inflation, would have been worth $8.83 in 1990—the time that *Barnes* was issued. (D.E. Nos. 62-2, 62-3). Plaintiff argues that, if $8.00 per day was insufficient in 1990 under *Barnes*, then the Circuit would not approve a nearly equivalent maintenance rate today. (Pl. Opp. Br. at 15).

It is possible that the CBA provision providing $78 a day for room and board during shore leave, in combination with Plaintiff's inflation calculation, may be enough to support a finding that the $16 maintenance rate was so insufficient as to constitute an impermissible abrogation of the shipowner's obligation under *Barnes*. Even if that were so, however, Plaintiff has failed to meet his evidentiary burden of showing a higher level of expenses (or liability for expenses) which he actually incurred during the relevant period.

---

[2] The Court notes that the Third Circuit remanded in *Barnes* to recalculate the proper maintenance rate, because the district court improperly included payments for the plaintiff's automobile, laundry, and toiletries in its maintenance-rate calculation. *Id.* at 641.

In *Barnes*, the Third Circuit declared that "it is established that the seaman is entitled only to expenses actually incurred." *Barnes*, 900 F.2d at 641 (citing *Johnson v. United States,* 333 U.S. 46, 50 (1948)). Consistent with this concept, the *Barnes* court found that the plaintiff was entitled to an amount greater than the $8 provided for in the CBA only after the plaintiff provided evidence of the specific expenses and liabilities he had incurred during the relevant period. *Id.* at 640. Indeed, the court found that the plaintiff had "satisfie[d] the requirement that the expenses or liability for the expenses be incurred," indicating that such a showing was a prerequisite for his claim of maintenance above the CBA's $8 rate. *See id.*

As Defendant points out, Plaintiff does not present any evidence of actual expenses relating to room and board during the relevant time period. (*See* Def. Mov. Br. at 19). Rather, Plaintiff bases his argument that he is entitled to a daily maintenance rate of $78 solely by reference to the separate "room and meal allowance" provision of the CBA granting seamen that amount for shore leave in different circumstances. (Am. Compl. ¶ 4; Pl. Opp. Br. at 15).

Plaintiff cites to *Alexandervich v. Gallagher Brothers Sand & Gravel Corporation*, 298 F.2d 918, 922 (2d Cir. 1961) and *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 91 (5th Cir. 1984) for the proposition that "[t]he amount an employer pays a seaman sent ashore for food and lodging . . . is evidence of the maintenance rate." (Pl. Opp. Br. at 15). Plaintiff argues that, based on *Alexandervich* and *Harper*, the CBA provision establishing $78 per day for room and board expenses is sufficient to show entitlement to that amount in maintenance payments, despite the CBA provision setting maintenance at $16 per day. (*id.*).

Indeed, as in *Barnes*, *Alexandrervich* and *Harper* took note of allowances provided to seamen for food and lodging during shore leave, and found those amounts to be probative of the appropriate maintenance rates. *See Harper*, 741 F.2d at 91 (noting that shipowner Zapata Off-

9

Shore Company "provided its seamen with a $20 daily allowance for food when Zapata sent them ashore for school or during stormy weather); *Alexandervich*, 298 F.2d at 922 (employer's provision of $2.07 in "grub money" was probative of the plaintiff's meal expenses); *Barnes*, 900 F.2d at 640 ("[i]n fact, the union contract itself provides that when rooms are not available for the crew an allowance of $20 per night is paid when the ship is in port, as well as $17 a day for food.").

However, *Alexandervich* and *Harper* differ from *Barnes* in that the *Barnes* plaintiff also presented evidence of his actual daily expenses for electricity, food, and homeowner's insurance, while the *Alexandervich* and *Harper* plaintiffs relied entirely on the above-mentioned CBA provisions to show entitlement to higher maintenance rates. The Court notes that of the three cases, only *Barnes* is binding precedent.

The Court declines to adopt the holdings of *Alexandervich* and *Harper* and follows only the mandate of binding precedent in *Barnes*—namely, that a plaintiff may be awarded maintenance above the contractually-set rate where he can show evidence of the "actual reasonable costs" that were incurred for room and board. *Barnes*, 900 F.2d at 635. As noted above, the *Barnes* court stressed a broad range of factors in support of its conclusion, and analyzed in great detail the nature of the plaintiff's daily expenses to determine whether the court below properly included each individual expense in its maintenance calculation. Indeed, the court went so far as to remand for a re-calculation of those specific daily expenses. An application of *Alexandervich* or *Harper* as requested by Plaintiff would thus render the bulk of *Barnes*'s analysis meaningless, if not contradict its very holding.

Accordingly, because Plaintiff failed to present any evidence of the cost of living in his region or his actual expenses for room and board during the relevant period, the Court grants summary judgment with respect to this claim in favor of Defendant.

### C. Whether the CBA Properly Limits Unearned Wages to Base Pay

Plaintiff also alleges that he and others similarly situated are entitled to "the overtime component of the unearned wages they otherwise would have earned per the general maritime law." (Am. Compl. ¶ 4). In support, Plaintiff relies primarily on *Padilla v. Maersk*, 721 f.3d 77 (2d Cir. 2013), and *Barnes*, 900 F.2d at 634. Defendant responds that both cases are distinguishable from the one at bar, and that the CBA properly limited Plaintiff's unearned wages to base pay. (Def. Mov. Br. at 5-6). For the reasons discussed below, the Court agrees with Defendant.

In *Padilla*, the plaintiff was injured while serving as a seaman aboard the Maersk Arkansas. *Padilla*, 721 F.3d at 80. The shipowner provided him with unearned wages in the amount of his base pay, despite the fact that he had also worked a substantial amount of overtime prior to his injury. *Id.* The plaintiff sued, claiming he was entitled to both unearned base-pay and overtime-pay under general maritime law. *Id.*

The court held that "while the entitlement to unearned wages arises under general maritime law, rates for unearned wages may be defined and modified in collective bargaining agreements." *Id.* at 82. The court explained that "only if the CBA expressly provides for a different computation of the seafarers' remedies does it modify the general maritime law." *Id.* In that case, however, the court found that the governing CBA was silent as to the appropriate calculation of unearned wages. *Id.* Because of this, the *Padilla* court concluded that the plaintiff's unearned wages must be defined solely by reference to general maritime law, under which the plaintiff "was entitled to recover in full the compensation that he would have earned 'but for' his injury." *Id.*

As Defendant properly notes, *Padilla* is distinguishable because the CBA here expressly modifies Plaintiff's entitlement to "unearned wages," defining unearned wages as base-pay at the

11

rate set forth in Plaintiff's employment contract. (*See* SUMF ¶ 6). On the other hand, as noted above, *Padilla* only granted the plaintiff's request for overtime pay because such limitations were not expressly set forth in the CBA. *Padilla*, 721 F.3d at 82. In fact, *Padilla* held that CBAs *may* set limitations on the rate of unearned wages, seemingly contradicting Plaintiff's position rather than supporting it. *See id.; Forde v. Waterman S.S. Corp.*, No. 12-3396, 2013 WL 5309453, at *4 (S.D.N.Y. Sept. 18, 2013) (holding that *Padilla* did not apply where CBA expressly limited unearned wages to base wages).

Neither is Plaintiff's argument supported by reliance on *Barnes*. Plaintiff cites *Barnes* for the proposition "that the unearned wage rate set in the collective bargaining agreement is not binding on a seaman who can show a higher amount of actual wages he did not earn because of his injury or illness." (Pl. Opp. Br. at 5). However, as Defendant points out, *Barnes* dealt with the seaman's right to maintenance, not unearned wages. Defendant argues that, while the rights to maintenance and unearned wages derive from a common source in general maritime law, the two have different purposes and must be calculated independently. (Def. Mov. Br. at 3-6). Thus, according to Defendant, *Barnes*'s restrictions on CBA provisions governing maintenance do not apply to CBA provisions governing unearned wages. (*Id.*). The Court agrees with Defendant that *Barnes* does not govern Plaintiff's claim with respect to unearned wages.

As both parties agree, *Barnes* set the lower limits on permissible contractual modification of maintenance payments, holding that such payments must at the very least cover an injured seaman's "actual expenses" for food and lodging. However, *Barnes* did not touch on an analogous restriction of contractual limitations on unearned wages, and several factors dissuade the Court from applying *Barnes*'s holding to unearned wage limitations.

12

For one, the two-part evidentiary test utilized in *Barnes* would make little sense if applied in the unearned wages context. As noted above, the *Barnes* plaintiff was required to show that (1) the $8 maintenance rate was inadequate to cover the cost of room and board in his region, and (2) his actual expenses exceeded that amount. Because wages are paid as compensation for labor rather than as an allowance for specific expenses, neither prong of this test would be relevant to determining the appropriate level of unearned wages.

Similarly, *Barnes* justified its protection of the seaman's right to maintenance by reference to the importance of providing "food and lodging of the kind and quality he would have received aboard the vessel." *Barnes*, 900 F.2d at 640. The *Barnes* court referenced "unearned wages" only tangentially in a footnote, noting that it "has the same historical bases as maintenance and cure" but is nevertheless calculated independently. *Id.* at 634 n.2. This Court thus does not read *Barnes* to govern Plaintiff's claim for overtime pay as part of unearned wages.

Accordingly, the Court rejects Plaintiff's argument that the CBA improperly limited unearned wages to base pay and grants summary judgment in favor of Defendant with respect to this claim.

### D. Whether Plaintiff is Entitled to Unearned Wages Until Achieving Maximum Cure Under the Shipowners' Liability Convention

Finally, Plaintiff alleges that, under Article 5 subsection 1(b) of the Shipowners' Liability Convention ("SLC"), 54 stat. 1693, seamen with dependents such as himself are entitled to unearned wages until the point of "maximum cure," rather than the conclusion of the voyage or contract period as otherwise mandated by general maritime law. (Am. Compl. ¶ 4; Pl. Opp. Br. at 10-14). In support, Plaintiff argues that "there should be no hesitancy in modernizing the duration of payment of unearned wages commensurate with the modern implicit recognition that some seamen now have dependents." (Pl. Opp. Br. at 12).

13

Defendant responds that Article 5 subsection 1(b) does not apply because it does not have the force of law. (Def. Mov. Br. at 10-18). According to Defendant, Article 5 subsection 1(b) is a "non-self-executing" provision of an international treaty whose status as federal law depends on Congress's passage of relevant federal legislation, which has not occurred. (*Id.*). The Court need not determine whether Article 5 subsection 1(b) is applicable here, because, as discussed below, Plaintiff fails to meet his burden of showing a period of illness that extended beyond his contract term which could have entitled him to additional relief under subsection 1(b).[3]

Article 5 subsection 1(b) states that, "where [a seaman's] sickness or injury results in incapacity for work the shipowner shall be liable . . . if the sick person has dependents, to pay wages in whole or in part as prescribed by national laws or regulations from the time when he is landed until he has been cured or the sickness or incapacity has been declared of a permanent character." 54 stat. 1693. Thus, should this provision apply, Plaintiff would conceivably be entitled to unearned wages until cured, even if the period of illness lasts longer than the term of the voyage or employment contract.

Here, however, Plaintiff has presented no evidence of a period of sickness extending beyond the contract term for which he had already received unearned wages. In fact, Defendant presents evidence, which Plaintiff does not dispute, that Plaintiff was deemed "fit for duty" as of December 4, 2012—fourteen days *before* the end of his contract term on December 18, 2012. (*See* D.E. No. 61, Defendant's Statement of Undisputed Material Facts ¶ 9; D.E. No. 59-7, exhibit F to

---

[3] Because the Court finds that Plaintiff failed to make a showing of entitlement to relief under Article 5 subsection 1(b) of the SLC even if it applies, the Court need not determine whether it in fact governs Plaintiff's claim. Nevertheless, the Court notes that at least one district court has implicitly held that subsection 1(b) lacks the force of law. *See De Gagne v. Love's Fisheries*, 125 F. Supp. 632, 633 (D. Mass. 1954) (Dismissing plaintiff's claim based on Article 5 subsection 1(b) of the SLC because "Congress has failed to enact legislation in furtherance of Section 1(b) of Article 5 of the Shipowners' Liability Convention").

Defendant's motion for summary judgment). And while the doctor's finding of being "fit for duty" may not necessarily equate to a determination that "maximum cure" had been reached, it is nevertheless probative of the fact that Plaintiff's period of illness had ended. *See Blouin v. Am. Exp. Isbrandtsen Lines, Inc.*, 319 F. Supp. 1150, 1156 (S.D.N.Y. 1970). Plaintiff has not presented any evidence to the contrary. Accordingly, the Court finds that, even if Article 5 subsection 1(b) of the SLC applies, Plaintiff has failed to show a period of illness beyond the contract term which could entitle him to additional unearned wages under the SLC. The Court thus grants summary judgment in favor of Defendant with respect to this claim.

## IV.   Conclusion

For the reasons set forth above, the Court grants summary judgment in favor of Defendant. An appropriate Order follows this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**